# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dominic Rizzi, by and through his parents, Joseph and Helen Rizzi, and Helen Rizzi, in her own right | Civil Action |
| **Plaintiffs,** | No. |
| v. | __20-82_____ |
| Austin's Place, | JURY TRIAL DEMANDED |
| **Defendants.** | |

## Complaint

As set forth below, Plaintiffs, Dominic Rizzi, by and through his parents, Joseph and Helen Rizzi, and Helen Rizzi, by and through counsel, Leigh D. Loman, Esq., and Ruder Law, claim violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§12181-89, and its implementing regulations, as well as the implementing regulations of Section 504 of the Rehabilitation Act of 1973. Specifically, Plaintiffs rely upon Title III of the ADA, 42 U.S.C. §§12181-89; 34 C.F.R. 300.516, and Title IV of the ADA, 42 U.S.C. §12203. Plaintiffs allege that Defendant discriminated against Dominic Rizzi on the basis of his disability, denying him the full and equal enjoyment of the benefits of and participation in Defendant's program. Plaintiffs further allege that Defendant discriminated against Helen Rizzi in retaliation for her advocacy on behalf of her son. And finally, Plaintiffs allege that Defendant retaliated against Dominic Rizzi in response to his Mother, Helen Rizzi's, advocacy on his behalf.

**PRELIMINARY STATEMENT**

1. This is an action brought by Joseph and Helen Rizzi on behalf of their son, Dominic Rizzi, who is an individual with a disability.

2. This action is also brought by Helen Rizzi on her own behalf.

3. This action alleges a violation of Title III of the ADA, 42 U.S.C. §§12181-89.

4. This action alleges a violation of Title IV of the ADA, 42 U.S.C. §12203.

5. This action also alleges a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

6. Plaintiffs allege that Defendant, Austin's Place, discriminated against Dominic Rizzi on the basis of his disability by denying him full and equal enjoyment of the benefits of and participation in Defendant's programs and activities.

7. Plaintiffs further allege that Defendant discriminated against Helen Rizzi by retaliating against her in response to her advocacy on behalf of her son, Dominic Rizzi.

8. Additionally, Plaintiffs allege that Defendant retaliated against Dominic Rizzi in response to his mother, Helen Rizzi's, advocacy on his behalf.

9. Plaintiffs request compensatory damages, punitive damages, attorneys' fees, and other appropriate relief.

**PARTIES**

10. Plaintiff Dominic Rizzi is a resident of Zelienople, Pennsylvania. He is currently twenty-four (24) years old, and he previously participated in the Austin's Place's program. Dominic is an individual with a disability, having been diagnosed with

Lennox-Gastaut Syndrome, intractable mixed epileptic seizures, autism, and an intellectual disability.

11. Plaintiff Helen Rizzi is the mother and Guardian of Dominic Rizzi, and is a resident of Zelienople, Pennsylvania.

12. Plaintiff Joseph Rizzi is the father and Guardian of Dominic Rizzi, and is a resident of Zelienople, Pennsylvania.

13. Defendant Austin's Place is a not-for-profit corporation organized under the laws of the State of Pennsylvania with its principal place of business at 276 Kaufman Road, Gibsonia, PA 15044, and the facility location in Butler, Pennsylvania.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant has sufficient minimum contacts with the venue, including a branch office in venue, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the venue.

**FACTUAL ALLEGATIONS**

16. Dominic Rizzi is an individual with Lennox-Gastaut Syndrome, intractable mixed epileptic seizures, autism, and an intellectual disability that substantially limits him in one or more major life activities including, but not limited to, brain function and his ability to interact with others.

17. Dominic Rizzi is a qualified individual with a disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.

18. Plaintiff Helen Rizzi is a resident of Zelieonople, Pennsylvania. Her son, Dominic Rizzi, previously attended Defendant's program.

19. Defendant regards Dominic Rizzi as having a disability within the meaning of the ADA and Section 504, as they acknowledge his Lennox-Gastaut Syndrome, intractable mixed epileptic seizures, autism, and intellectual disability, and recognize that these diagnoses limit one or more of his major life functions.

20. Furthermore, Defendant's program was specifically designed for young adults who are diagnosed with autism spectrum disorder, developmental, and intellectual disabilities and who are moderately to significantly impaired. By permitting Dominic Rizzi to participate in their program, Defendant recognized and acknowledged his qualifying disability.

21. Defendant's mission is "to provide specialized, intensive transitionally focused training for young adults graduating from traditional school systems who are diagnosed with autism spectrum disorder, developmental and intellectual disabilities and who are moderately to significantly impaired."

22. Further, Defendant offers daily programming and training activities such as vacuuming, doing laundry, setting the table, and washing dishes, to provide their participants with post-secondary training to make employment attainable.

23. Defendant also offers therapeutic services, nursing services, organized recreational activities, assistance with daily living activities, and transportation to and from community based instruction.

24. Thus, Defendant is a place of public accommodation under Title III of the ADA, 42 U.S.C. § 12182, as it operates as a place of education and a social service center for adults with disabilities.

25. To participate in Defendant's program, participants utilize Adult Autism, Consolidated, and Person/Family Directed Support Home and Community-Based Waivers, which are approved by the Centers for Medicare and Medicaid Services under Section 1915(c) of the Social Security Act (42 U.S.C. §1396n) and are designed to help people with Autism and Intellectual Disabilities live more independently in their homes and communities. Therefore, Defendant is a recipient of federal funding, and thus is subject to the Rehabilitation Act.

26. Joseph and Helen Rizzi enrolled Dominic Rizzi into Defendant's program at the beginning of the Fall of 2016.

27. Dominic Rizzi has recurring seizures. They can range from three to fifteen seizures per day, and typically continue for three to four minutes. According to the daily seizure log maintained by Defendant from January through June 2019, Dominic Rizzi had the majority of his seizure activity between 12:30pm and 1:30pm.

28. Soon after Dominic Rizzi started attending Defendant's program, Joseph and Helen Rizzi had concerns related to the training of the staff. Since Dominic has epileptic seizures, possibly multiple in a day, the Rizzis were surprised that the personal aide that was assigned to work with Dominic had no experience working with someone with a seizure disorder. Despite this, the personal aide was not provided any additional training after being assigned to Dominic's case.

29. During Dominic's second year in the program (2017-2018), his parents raised a concern regarding swimming time. Swimming was to be a part of Dominic's daily programming; however, he would occasionally have seizures during his scheduled swim time, so he would not be permitted to participate. Even though there were other times that he could swim during the day, the staff refused to provide Dominic with alternative opportunities to swim when he was forced to miss his time due to seizure activity.

30. In December 2017, Defendant sent out a letter to all families of enrolled students to let them know that they were going to begin participating in community based activities on a regular basis. However, this never occurred during the 2017-2018 year.

31. Dominic began his third year in the program in the fall of 2018. Shortly after the year began, the new Program Director wanted to put together a seizure protocol for Dominic, which is something that the program had not created in the previous two years he had attended.

32. During this time, the new Program Director worked with Butler County Health and Human Services and the Health Care Quality Unit (HCQU) to put the seizure protocol together, and for the first time HCQU came in to train the staff.

33. The protocol describes the steps that program staff should take when a seizure begins, when they have to alert program management, when they have to alert parents, and when they have to contact police for emergency medical services.

34. In October 2018, before the protocol was in place, Dominic's support coordinator reported that she was at Austin's Place when Dominic had a seizure that continued for seven minutes. Mrs. Rizzi had not been called, nor had 911 been contacted, despite

standard medical procedure requiring these calls when a seizure lasts longer than five minutes.

35. Joseph and Helen Rizzi were later informed that the staff didn't know about the standard procedure at the time, as there had been some staff turnover, including the loss of the Program Director, so the protocol had not yet been implemented and the new staff had not been appropriately trained.

36. Defendant then said that Dominic could not attend without an official seizure protocol in place, even though he had for two years. As a result, Dominic was not permitted to attend Defendant's program for five weeks. Once the protocol was put into place, Dominic was permitted to return in late November.

37. In the spring of 2019, Austin's Place began again discussing the initiation of Community Participation Supports with the families of enrolled participants.

38. In Dominic's Individual Service Plan (ISP), it is mentioned in the Individual Preference section that he would like to participate in activities in the community, and that he would require access to two staff to ensure he could be safely assisted if he were to have a seizure. His ISP also states that Defendant will plan community based activities accordingly to meet Dominic's interest and needs.

39. During his time in the Defendant's program, Dominic only went on a few community outings, many of which were nothing more than brief errands staff were required to complete for Defendant's program, unrelated to his ISP. These outings did not begin until August 2019.

40. On July 1, 2019, Defendant sent out a letter to the program's participants that stated that the Office of Developmental Programs (ODP) had implemented Community Participation Supports. The expectation was that at least 25% of these services and supports would be provided in the community and not at the licensed facility. (See attached Exhibit A as though fully set forth herein).

41. If the ISP team determined that an individual could not or chose not to engage in community activities at least 25 percent of his or her support time on average per month, a variance form must be completed." (See Attached Exhibit A as though full set forth herein).

42. One of the permissible reasons for a variance is that an individual has current medical needs that limit the amount of time he or she can safely spend in the community.

43. On July 22, 2019, the ISP team met to discuss a possible variance for Dominic related to the Community Participation Supports. The team agreed that Dominic did not need a variance, and could go out into the community with the support.

44. On July 25, 2019, Defendant sent a letter to Parents stating their intent to discontinue services for Dominic. (See attached Exhibit B as though fully set forth herein).

45. The Defendant's reason was that they believed Dominic needed a nurse to address his high level of seizure activity, and because they did not receive the variance that they had requested for the nurse, they would be forced to provide one at their own expense.

46. In this correspondence, Defendant also expressed concern related to the recent ISP team agreement to change Dominic's Community Participation Support to 25%, which Defendant alleged was against the recommendation of the day program staff.

47. Parents, however, spoke to multiple day program staff who shared that they had no problem taking Dominic out into the community.

48. Since it was planning to discontinue services, Defendant gave the family a 30-day notice of its intent to discharge. It stated it would continue to provide services for up to 30 days, until Dominic transitioned to another provider/service, or Defendant received alternate instructions from ODP.

49. On August 6, 2019, ODP instructed Defendant to permit Dominic to remain in their program until the family had located another appropriate option.

50. Also on August 6, 2019, Parents received Defendant's new Visitor Policy. Until then, there was no set Visitor Policy in place.

51. This Policy defined visitors as "any family member, guardian, friend of an Austin's Place client or employee, community member or media personnel."

52. The new Policy stated that visitors were only permitted during regular programming hours when they had a scheduled appointment with a member of Defendant's leadership team and must be escorted by staff at all times. (See attached Exhibit C as though fully incorporated herein).

53. Parents drove Dominic to and from the program every day. Usually, in the morning, Helen Rizzi would walk Dominic into the building to his locker, help him settle in, and provide a brief update on his night and morning to his staff.

54. After the Visitor Policy went into effect, Parents were no longer permitted to enter the building, and instead had to walk Dominic to the front porch and drop him off to his staff.

55. Before the Policy went into place, Dominic's mother would go inside or the staff would walk him to the car at the end of the day to update Parents on Dominic's day. Once the Visitor Policy went into place, this was no longer permitted, and Parents instead had to pick Dominic up on the porch.

56. Parents were the first to receive the written Visitor Policy. It did not get distributed to other families until a few days later.

57. Parents removed Dominic from the program in November 2019 following numerous staff turnovers, as they learned Dominic's seizure protocol and activities of daily living were not being shared with the new staff.

58. In other words, Dominic was constructively forced out of Defendant's program as a result of its unwillingness to appropriately support him. It was no longer safe for him to attend.

59. When Parents pulled Dominic from the program, Helen Rizzi had to stop working so that she could be home to supervise Dominic.

60. With Dominic now at home, Parents have been forced to create a self directed program for Dominic, which has also limited his ability to socialize.

61. Presently, Dominic is not receiving any educational or transition related programming.

## COUNT ONE: VIOLATION OF SECTION 504
### Dominic Rizzi v. Austin's Place

62. Plaintiffs incorporate the allegations in paragraphs 1 through 61 above as though fully set forth herein.

63. Under Section 504 of the Rehabilitation Act:

> No otherwise qualified individual with a disability…shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

      Federal financial assistance… 29 U.S.C. §794(a); 34 C.F.R. §104.4(a)

64. More specifically in the instant case, 34 C.F.R. §104.4(b)(i) applies, which prohibits an organization from "deny[ing] a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service."

65. Defendant receives federal funding, and its educational, recreational, and community based activities qualify as a program or activity within the meaning of the Rehabilitation Act and its implementing regulations. 34 C.F.R. §104.38(k).

66. Defendant denied Dominic Rizzi the opportunity to participate in its program as a result of his status as a person with a disability.

67. The intent of the Rehabilitation Act, in addition to prohibiting disparate treatment of an individual based on the existence of a disability, is to "prohibit discrimination against one 'subgroup' of disabled people as compared to another subgroup if the characteristic distinguishing the two subgroups is the nature of their respective disability." S.K. v. North Allegheny S.D., 2015 WL 7308671 *6 (November 19, 2015).

68. Dominic Rizzi is an otherwise qualified individual under the Rehabilitation Act, as he would remain able to access Defendant's program if they had made reasonable accommodations. Id.

69. Defendant intentionally and unlawfully denied Dominic Rizzi the opportunity to participate in all elements of its program by preventing him from participating in swimming sessions and from receiving Community Participation Supports because of his seizure activity.

70. As a result of Defendant's actions, Dominic Rizzi has suffered consequential damages, including pain and suffering and emotional harm and distress.

71. The Defendant, by virtue of its conduct described herein, discriminated against Dominic Rizzi because of his disabilities and in violation of Section 504 of the Rehabilitation Act.

### COUNT II: VIOLATION OF TITLE III OF THE ADA
### Dominic Rizzi v. Austin's Place

72. Plaintiffs incorporate the allegations in paragraphs 1 through 71 above as though fully set forth herein.

73. Title III of the ADA clearly states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. §12182.

74. Defendant is a public accommodation under Title III of the ADA, as it utilizes and leases places of public accommodation for its events and activities.

75. Defendant prohibited Dominic Rizzi from accessing its activities, thus discriminating against Dominic Rizzi on the basis of his disabilities.

76. Title III of the ADA further states:

> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. 42 U.S.C. §12182(b)(1)(E).

77. Defendant prevented Helen Rizzi from entering the building to assist Dominic, which negatively impacted his ability to participate in their program.

78. Defendant also attempted to discharge Dominic from its program due to Defendant's disagreement with the ISP team's recommendation that he begin Community Participation Supports. Defendant did so because they were denied a variance for a nurse, and did not want to be financially responsible for the provision of two staff members to support Dominic.

79. Defendant, by virtue of its conduct described herein, discriminated against Dominic Rizzi because of his disabilities and in violation of Title III of the Americans with Disabilities Act.

## COUNT III: VIOLATION OF TITLE IV OF THE ADA
### Helen Rizzi v. Austin's Place

80. Plaintiffs incorporate the allegations in paragraphs 1 through 79 above as though fully set forth herein.

81. Title IV of the ADA clearly states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. 42 U.S.C. §12203.

82. Defendant retaliated against Helen Rizzi by enacting a policy to prevent her from entering into its building. This policy was implemented in direct response to Helen Rizzi's advocacy on behalf of her son, Dominic.

83. Helen Rizzi opposed her son's treatment by Defendant's program. Defendant responded by preventing her from entering the building to support her son.

84. Defendant, by virtue of its conduct described herein, discriminated against Helen Rizzi in response to her advocacy on behalf of Dominic in violation of Title IV of the Americans with Disabilities Act.

### COUNT IV: VIOLATION OF TITLE IV OF THE ADA
### Dominic Rizzi v. Austin's Place

85. Plaintiffs incorporate the allegations in paragraphs 1 through 84 above as though fully set forth herein.

86. Title IV of the ADA clearly states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. 42 U.S.C. §12203.

87. Defendant retaliated against Dominic Rizzi by constructively removing him from their program in response to his mother's advocacy on his behalf.

88. Helen Rizzi opposed her son's treatment by Defendant's program. Defendant responded by constructively forcing Dominic out of its program through its failure to appropriately support him.

89. Defendant, by virtue of its conduct described herein, discriminated against Helen Rizzi in response to her advocacy on behalf of Dominic in violation of Title IV of the Americans with Disabilities Act.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in their favor and against Defendant as follows:

a) A declaratory judgment stating that Defendant discriminated against Dominic Rizzi by denying him access to its programs and services, as well as in failing to engage in a cooperative process regarding the provision of reasonable accommodations to permit continued access, in violation of Title III of the ADA and Section 504 of the Rehabilitation Act;

b) A declaratory judgment stating that Defendant retaliated against Helen Rizzi by denying her access to its facilities, which prohibited her from participation in Dominic's care, after she objected to Defendant's treatment of her son, in violation of Title III and IV of the ADA;

c) A declaratory judgment stating that Defendant retaliated against Dominic Rizzi in violation of Title IV of the ADA;

d) Compensatory damages;

e) Attorneys' fees and costs; and

f) Such other relief as this Honorable Court deems appropriate.

Respectfully Submitted,

Ruder Law, LLC

<u>/s/ Leigh Loman</u>
Leigh D. Loman. Esq
Attorney I.D. No. 319979
Email: leighloman@ruderlaw.com